IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 3:22CR98-MHL |
| | ) |
| DOMONIQUE MARTIN, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' POSITION ON SENTENCING AND
MOTION FOR DOWNWARD VARIANCE**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Erik S. Siebert, Assistant United States Attorney, hereby submits its position with respect to the sentencing factors. The United States concurs with the Probation Officer's determination that the defendant's Total Offense Level is 33, and that her Criminal History Category is I. *See* PSR, Worksheet D. The defendant's applicable Guideline range is 135-168 months. *Id*. Pursuant to the factors contained in 18 U.S.C. § 3553(a), the terms of the plea agreement reached by the parties, and for the reasons set forth below, the United States requests a downward variance to a guideline range of 87-108 months. Within that guideline range, the United States recommends a low-end sentence of 87 months imprisonment.

**I.   Background**

Beginning in and around February 2020 and continuing through September 3, 2020, defendant Domonique Martin ("Martin") participated in a multi-state drug trafficking conspiracy led by Co-Conspirator #1, a California and Richmond based drug trafficker. PSR ¶ 11. As part

1

of this conspiracy, in her role as drug courier, Martin picked up methamphetamine from Co-Conspirator #2 and transported the drugs within the Commonwealth of Virginia on behalf of Co-Conspirator #1. *Id.* In addition, Martin picked up drug proceeds from various co-conspirators throughout Virginia, both known and unknown, and made deposits into the banking system on behalf of Co-Conspirator #1. *Id.* Co-Conspirator #1 paid Martin a fee for each job she did in her drug courier and money laundering roles. *Id.*

Beginning in approximately February 2020, Martin approached Co-Conspirator #1 to serve in his drug conspiracy in an effort to make additional money. *Id.* At the time Co-Conspirator #1 was based in California, however, would routinely travel to Richmond, Virginia, in furtherance of his drug activities. *Id.* Initially, Co-Conspirator #1 tasked Martin with cash pickups from drug traffickers in the Central Virginia region who owed Co-Conspirator #1 money for drug shipments. *Id.* When cash needed to be collected, Co-Conspirator #1 would contact Martin and provide her the individual to contact to arrange for pickup. *Id.* Martin picked up cash from known co-conspirators located in various locations throughout Virginia to include Richmond and Charlottesville regions. *Id.* After making these cash pickups, which typically ranged from $2,000-$7,000, Martin deposited the money into her personal bank account and transferred the money to a Cash App account provided by Co-Conspirator #1. *Id.* Martin then transferred the money from her Cash App account to Co-Conspirator #1's Cash App account or wired the money to a third party provided by Co-Conspirator #1 via Western Union. *Id.* From March 2020 through August 2020, Martin picked up cash on behalf of Co-Conspirator #1 and transferred the money on at least ten separate occasions. *Id.* Co-Conspirator #1 paid Martin approximately $100 for each cash pickup and completed money transfer of over $2000. *Id.*

On or about August 31, 2020, Co-Conspirator #1 contacted Martin about a job involving the transportation of controlled substance from Richmond, Virginia, to the Charlottesville, Virginia area. *Id.* As part of this job, at the direction of Co-Conspirator #1, Martin communicated with Co-Conspirator #2 about picking up the controlled substance at a designated location in Chester, Virginia. *Id.* On approximately September 2, 2020, Martin traveled to the designated location in the Eastern District of Virginia and picked up methamphetamine from Co-Conspirator #2. *Id.* On September 3, 2020, Martin transported over 800 grams of methamphetamine to an individual in Stuarts Draft, Virginia. *Id.* Upon arrival to the meeting location in Stuarts Draft, law enforcement officers interdicted Martin and recovered a firearm between the driver's seat and center console. *Id.* The firearm was later determined to be a Sig Sauer, Model P365, 9mm caliber, semi-automatic pistol, serial number 66A273965. *Id.* A search of the vehicle's trunk revealed a handbag containing two large ziplock bags containing a white crystalized substance. *Id.* The white crystalized substance was seized and sent to the DEA Mid-Atlantic Laboratory for analysis. *Id.* The DEA Mid-Atlantic Laboratory determined the white crystalized substance was 843 grams of methamphetamine hydrochloride (775 grams of actual methamphetamine). *Id.* At the time of the transportation, Martin knew she was transporting a controlled substance on behalf of Co-Conspirator #1.

On July 12, 2022, Martin was charged in a one-count Criminal Information. PSR ¶ 1. The Criminal Information charged the defendant with Conspiracy to Possess with the Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B). PSR ¶ 2. On August 15, 2022, the defendant entered a plea of guilty to Count One of the Criminal Information pursuant to a written plea agreement. PSR ¶ 2. As part of the

plea agreement, the parties jointly recommended the following: (1) the defendant conspired to distribute at least 500 grams but less than 1.5 kilograms of actual methamphetamine, pursuant to § 2D1.1(c)(1) (level 34); (2) the defendant possessed a dangerous weapon, i.e. firearm, resulting in a two-point enhancement, pursuant to § 2D1.1(b)(1); (3) the government will recommend a three-level reduction for acceptance of responsibility, pursuant to § 3E1.1; (4) the government will recommend a capped sentence of 108 months imprisonment and the defendant is free to recommend any term of years of imprisonment.  PSR ¶ 6.  The Court accepted the defendant's plea and sentencing was set for July 7, 2023.

## II.        Motion for Downward Variance and Position on Sentencing

Based on the defendant's limited role in the offense as a mere courier and her lack of any criminal history, the United States asks the Court for a downward variance.  By serving as a drug courier who was not aware of the full extent of the conspiracy, Martin failed to profit significantly from her role.  Moreover, with no prior criminal record, Martin's actions in this conspiracy appear to be an aberration to a generally law-abiding life.

In addition, based on the government's lack of evidence related to Martin's knowledge of the high purity of the methamphetamine, her role as a mere drug courier, as well as other factors related to the case, the parties are asking this Court to sentence Martin under the methamphetamine guidelines, as opposed to the actual methamphetamine guidelines.  Although the parties agree the guidelines are properly calculated in this case, due to the unique circumstances of this offense, as well as the significant sentence involved under the methamphetamine guidelines, the United States does not object to a downward variance.  *See United States v. Moreno*, 583 F.Supp.3d 739 (W.D.Va 2019) (citing *United States v. Hoover*,

2018 WL 5924500, at *4 (D. Idaho Nov. 13, 2019)). For all these reasons, the United States recommends a downward variance to 87 months.

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

A.  **Nature and Circumstances of the Offenses**

In this case, the defendant, a woman with no prior criminal history served as a drug courier for a significant California based poly-drug trafficker. Facing monetary troubles, Martin agreed to assist Co-Conspirator #1 in picking up drug money on several occasions and delivering a shipment of drugs, which turned out to be over 800 grams of highly pure methamphetamine to a confidential informant. This criminal activity, which ran from February 2020 to September 2020, was sporadic, limited, and did not result in Martin receiving a significant profit from her illegal activities. In addition, although it is clear Martin was aware she was involved in the

trafficking a significant amount of some type of illegal drug, the United States has no evidence that Martin knew she was actually delivering high-grade methamphetamine. Although this fact does not alter Martin's criminal intent for purposes of guilt, it should cause some mitigation in terms of an ultimate sentence.

Despite Martin's limited role in this conspiracy, neither party can downplay the significant amount of methamphetamine involved in this case. By distributing over 800 grams of highly pure methamphetamine, Martin served a significant role in insulating Co-Conspirator #1 and others from detection by law enforcement. With tens of thousands of doses of dangerous amounts of methamphetamine in her possession, Martin attempted to thwart federal drug laws in a significant manner. Moreover, by arming herself with a pistol, Martin greatly increased the chances of a violent encounter with others. However, the United States must acknowledge that Martin's firearm was properly registered to a family member, she was not prohibited at the time she possessed the firearm, and reportedly kept the weapon in her vehicle based on job as a Door Dash and Instant Cart delivery driver not related to her drug trafficking activities. Despite a potential innocent explanation for her possession of the firearm, Martin does not and should not receive any benefits of a safety-valve reduction under U.S.S.G. § 5C1.2.

Therefore, focusing on the nature and circumstances of the defendant's offense, the United States believes a downward variance to 87 months is appropriate for this factor.

**B.      History and Characteristics of the Defendant**

The defendant is 35 years old and brings no criminal history before this Court, resulting in a criminal history category I. PSR ¶¶ 29-31. Martin was born in Columbia, South Carolina, lived in Hawaii and Texas, and relocated to Virginia in 2000. PSR ¶ 41. Martin's father is

retired from the United States Navy and her mother is employed by the Department of Veteran's Affairs. PSR ¶¶ 37-38. Martin reports being raised in a loving home and her parents were both actively involved in her life. PSR ¶ 44.

The defendant reports a long history of using alcohol, marijuana, Molly, and Ecstasy. PSR ¶¶ 58-59. From September 2019 through May 2020, Martin participated in an inpatient substance abuse treatment program through the McShin Foundation. PSR ¶ 60. While on pre-trial release in this case, Martin submitted a positive urine sample for marijuana on October 19, 2022. PSR ¶ 61.

In 2005, Martin graduated from Phoebus High School in Hampton, Virginia. PSR ¶ 64. While in high school, Martin played soccer, ran track, was on the dance and cheerleading teams, and had a 3.05 grade point average. *Id.* In 2011, Martin earned her bachelor degree in science from Virginia State University, with a grade point average of 2.35. PSR ¶ 63. Following her college graduation, Martin has been employed as a Door Dash and Instacart delivery driver, worked as a server/cashier/delivery driver for a restaurant, and most recently worked as a heavy machine operator. PSR ¶¶ 66-68.

Martin reports being shot in 2011 and 2018. PSR ¶¶ 51-52. In both instances, she reports that she was randomly shot as an innocent bystander. *Id.* In addition, Martin reports suffering from depression, anxiety, and post-traumatic stress disorder. PSR ¶ 55. Martin is currently undergoing individual counseling and various medications to assist with her mental health issues. PSR ¶ 56.

Based on Martin's lack of criminal history, educational status, and stable employment, a downward variance is warranted and a sentence of 87 months will adequately reflect the history

and characteristics of the defendant.

**C.      A Sentence Within the Guidelines Serves the Factors of § 3553**

      1.   <u>Seriousness of the Offense; Provide Adequate Punishment</u>

This factor supports a sentence of 87 months imprisonment.   The defendant, an individual with no prior interaction with the criminal justice system, participated in the delivery of over 800 grams of methamphetamine.   By choosing to make extra money by accepting a cash pick up and courier job from a significant poly-drug trafficker, Martin got into the deep end of a significant criminal organization.   Similarly, by choosing to carry a firearm while transporting significant amounts of methamphetamine, Martin further compounded her crimes.

Based on the significant amounts of methamphetamine involved in this case, Martin must also be held responsible for her participation in a large scale drug trafficking conspiracy.   By serving as a drug courier for a California source of supply, Martin assisted in the movement of an extremely potent shipment of methamphetamine that could have led to a large number of overdoses in the Central Virginia region.   Due to the dangerous nature of actual methamphetamine, Martin's actions certainly had a negative impact on many people's lives in the Richmond community—for both addict and non-addict alike.

Similarly, as a California based drug broker and source of supply, who occasionally traveled to Virginia, Co-Conspirator #1 needed individuals like Martin to deliver drugs and deposit drug money so he could hide in obscurity, while he continued to maintain a vibrant drug business in Virginia.   But for Martin, and other trusted co-conspirators like her, Co-Conspirator #1 would have been unable to operate such a large-scale operation.

As a result, a sentence of 87 months will reflect the seriousness of her offense and will

promote respect for the law.

    2.  <u>Need to Deter Future Criminal Conduct</u>

A sentence of 87 months imprisonment will ensure that the defendant fully appreciates the gravity of her conduct in this case. As an individual with no prior convictions, the United States is confident the recommended sentence will significantly deter Martin from any future criminal activity. Therefore, a sentence of 87 months is sufficiently lengthy to deter her and other first time drug traffickers from future criminal conduct.

    3.  <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

To be sure, the defendant has engaged in a significant drug trafficking conspiracy. Yet in her role as courier and cash facilitator, the defendant had little knowledge of the overall scope of the conspiracy. Despite her possession of a firearm in her vehicle during the delivery of the drug shipment and the significant quantities of highly pure methamphetamine transported, the United States is not aware of any future threat to the public by Martin. With any term imposed being a significant sentence for the defendant, the United States believes she will have learned a difficult lesson and will not be a future threat to public safety. As a result, the United States recommends a downward variance to 87 months imprisonment.

    4.  <u>Need to Provide Treatment to Defendant</u>

The defendant reports a long history of using marijuana, Molly, Ecstasy, and alcohol. PSR ¶¶ 58-62. Based on Martin's positive test for marijuana while on pre-trial release in this case and her significant substance abuse problem, the United States recommends drug treatment for the defendant.

5. <u>Need to Avoid Unwarranted Disparities</u>

The defendant's present activities do fall outside the heartland of criminal offenses, and a downward variance to 87 months will ensure that no unwarranted disparity exists between his sentence and the sentence of a like-positioned defendant. In fact, as a multi-time convicted felon and the leader of the California based drug trafficking organization, Co-Conspirator #1 received a sentence of 156 months from this Court. Taking into consideration Co-Conspirator #1's sentence, the United States believes a downward variance and a sentence of 87 months is appropriate for Martin.

### III.  Conclusion

For the reasons stated above, the United States submits that a downward variance to an 87-month sentence is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

_____/s/_____
Erik S. Siebert
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: erik.s.siebert@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Andrew Sacks, Esquire
> 150 Boush Street, Suite 505
> Norfolk, Virginia 23510

/s/
Erik S. Siebert
Virginia Bar No. 79057
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: erik.s.siebert@usdoj.gov